# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DAVID SNYDER, | ) | CASE NO. 1:17-cv-02157 |
| Plaintiff, | ) ) | JUDGE JAMES GWIN |
| v. | ) ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| NANCY A. BERRYHILL, *Acting Comm'r of Soc. Sec.*, | ) ) ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) ) | |

Plaintiff, David Snyder (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision final be VACATED and the case REMANDED for proceedings consistent with this opinion.

**I. Procedural History**

On May 8, 2014, Plaintiff filed his applications for POD and DIB, alleging a disability onset date of November 1, 2013. (Transcript ("Tr.") 167-168). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 119-128). Plaintiff participated in the hearing on July 12, 2016, was represented by counsel, and testified. (Tr. 36-75). A vocational expert ("VE") also participated and testified. *Id*. On September 22, 2016, the ALJ found Plaintiff not disabled. (Tr. 29). On September 21, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-5).

On October 12, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13 & 14). Plaintiff asserts one assignment of error, contending the ALJ committed reversible error by failing to specifically recognize Dr. Pavluk as Plaintiff's treating physician and assigning only partial weight to his opinion. (R. 13, PageID# 3699).

**II. Evidence**[1]

**A. Relevant Medical Evidence**

   **1. Treatment Records**

On November 1, 2013, the alleged onset date of disability, Plaintiff was seen by Charles Pavluk, M.D., Plaintiff's treating physician, for an initial evaluation of stage I thyroid cancer.

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties from the applicable time period and also deemed relevant by the court to the assignment of error raised. Furthermore, as the weight ascribed to the claimant's testimony or the VE's testimony is not in dispute, the court foregoes a recitation of the hearing testimony.

(Tr. 1457-1467). Plaintiff denied any musculoskeletal pain or neurological symptoms. (Tr. 1458-1459). On examination, Dr. Pavluk noted Plaintiff was in no acute distress, normal gait, no joint swelling, and had normal mood and affect. (Tr. 1462). Though Dr. Pavluk monitored Plaintiff for lumbar disc pain, Plaintiff was symptom free. (Tr. 1465). Plaintiff's conditions included asthma, lumbar disc disease, benign prostatic hypertrophy, reflux esophagitis, coronary artery disease, and sleep apnea. (Tr. 1465-1466).

On December 2, 2013, Plaintiff returned to Dr. Pavluk with similar clinical findings and diagnoses. (Tr. 1449-1456).

On December 27, 2013, Plaintiff's complaints of chest pain were noted to be skeletal and unlikely of cardiac origin. Testing was deemed unnecessary. (Tr. 1447). An EKG "abnormality of left bundle branch block" was noted as "old and does not warrant any further testing at this point." *Id*.

On April 22, 2014, Plaintiff was seen by James Diekroger, M.D. (Tr. 1550-1553). Dr. Diekroger diagnosed unspecified backache controlled with medication, edema, type II diabetes uncontrolled but without complication, long term use of anticoagulants (controlled), and constipation. (Tr. 1552-1553).

On September 5, 2014, Plaintiff saw Dr. Pavluk for a routine follow-up of his cervical radiculopathy. (Tr. 1559). Plaintiff said his current pain level was an eight on a ten-point scale. *Id*. Dr. Pavluk indicated Plaintiff was compliant with his medication regimen and complained of side effects. *Id*. Plaintiff's symptoms included worsened pain in his upper, lower, and mid back, worsened lower extremity pain and weakness. *Id*. Plaintiff's past treatment included non-steroidal anti-inflammatory drugs, analgesics, opioid analgesics, antidepressants, anticonvulsants, systemic corticosteroids, physical therapy, nerve blocks, epidural injections, and

3

use of a TENS unit. (Tr. 1559). Plaintiff reported his pain was undiminished. *Id*. Plaintiff's thyroid cancer related symptoms included unrefreshing sleep, impaired concentration and memory, irritability, morning headaches, and depression. (Tr. 1559-1560). On examination, Plaintiff had no joint stiffness or swelling. (Tr. 1560). The doctor's examination was largely normal, including normal gait, and normal musculoskeletal, neurological, and psychiatric systems. (Tr. 1564-1565).

On December 10, 2014, Plaintiff was seen by Dr. Pavluk for oral herpes simplex and an upper respiratory infection. (Tr. 2452-2459). On physical examination, Plaintiff was in no acute distress, he had normal gait, and normal mood and affect. (Tr. 2458, 2466). He reported a pain level of 8 of 10. (Tr. 2460). He was diagnosed with acute sinusitis, herpes simplex type 1 infection, and otitis externa. (Tr. 2459, 2466).

On January 23, 2015, Plaintiff was seen by Dr. Diekroger for follow up of back pain and diabetes mellitus. (Tr. 3337). His diabetes was uncontrolled but without mention of complication. (Tr. 3339).

On August 24, 2015, Plaintiff was again seen by Dr. Diekroger for a follow up of back pain, URI symptoms, and breast lump. (Tr. 3378). His diabetes remained unchanged, but he reported a mass of the left chest wall that was getting bigger. (Tr. 3379).

On September 25, 2015, Plaintiff was seen by Dr. Pavluk reporting "prodrome, aura, scotoma, headache, nausea and vomiting. (Tr. 3469). He reported a current, average, and minimum pain level of 4, and a maximum pain level of 8 of 10. *Id*. Plaintiff's physical examination remained largely unremarkable, including normal gait and normal mood and affect. (Tr. 3474-3475). Dr. Pavluk's impression was migraine headaches with inadequate control and deterioration, polycythemia, diabetes type II uncontrolled and deteriorating, mild thyroid cancer

4

that was responding to treatment, polycystic kidney disease with unchanged renal function, severe cervical and lumbar radiculopathy unresponsive to treatment, coronary heart disease that was stable and responsive to treatment, gastroesophageal reflux disease (GERD), benign prostatic hyperplasia, and asthma in stable condition. (Tr. 3476-3477).

On January 20, 2016, Susan Mathai, M.D., saw Plaintiff for complaints of inflammation of his irises in both eyes, joint pain in his elbows and wrists, and cramping in his rib cage. (Tr. 3449). Plaintiff also had a history of chronic back pain since the 8th grade. *Id*. On examination, Plaintiff was in a pleasant mood and in no acute distress. (Tr. 3452). Muscle strength and tone was normal with no decrease in muscle mass, he had normal gait and station, no joint pain, but his ambulation was "slow and stiff." (Tr. 3453). On palpation, Plaintiff had pain in the thoracic and lumbar spine, as well as stiffness and mild decreased range of motion of both hips. *Id*.

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On March 13, 2015, Mitchell Wax, Ph.D., performed a consultative psychological examination of Plaintiff. (Tr. 3353-3357). He diagnosed major depression. (Tr. 3356). In terms of functionality, Dr. Wax opined that Plaintiff could understand, remember, and carry out job instructions. (Tr. 3357). Nevertheless, Dr. Wax opined that Plaintiff would have difficulty maintaining attention and concentration due to depression, noting Plaintiff's lack of persistence at tasks he sets for himself at home. *Id*. He also would not be able to respond appropriately to supervision and coworkers because he was "tired and did appear distant during today's evaluation." *Id*. He also could not respond appropriately to work pressure, "though he was able to focus and answer questions [during the interview] he appeared distant and faraway." *Id*.

On March 7, 2016, Dr. Mathai wrote a letter concerning Plaintiff's "Social Security Disability claim" wherein she referenced the January 20, 2016 visit, concluding that Plaintiff's

5

"life is currently impacted due to his generalized joint pain," which rendered him "not able to do [activities of daily living] due to the joint pain and stiffness" (Tr. 3468).

On April 4, 2016, Dr. Pavluk wrote a letter on Plaintiff's behalf. (Tr. 3479-3480). Dr. Pavluk indicated he had treated Plaintiff for several years. (Tr. 3479). According to Dr. Pavluk, Plaintiff's condition deteriorated over this time span due to complications from thyroid cancer and severe pain stemming from advanced degenerative arthritis in the neck and spine. *Id*. He noted that each pain management physician who has seen Plaintiff agreed that surgery would be risky. *Id*. Dr. Pavluk noted that Plaintiff's current pain management regimen included Methadone, which restricted his ability to continue cognitive employment as he would be unable to think for prolonged periods of time. *Id*. Dr. Pavluk opined that Plaintiff could not carry more than five pounds, and that "standing, lifting, and movement for long periods of time would be quite difficult," as Plaintiff is "unable to sustain even short walks, for no more than 5-10 minutes, without interruption." *Id*. He indicated that sitting was a "challenge" for Plaintiff as he would need to constantly get up to move around. *Id*. Plaintiff was unable to crouch, kneel, or bend due to profound orthopedic impairment. *Id*. His medications hindered his ability to concentrate and to get along with the public, coworkers, and supervisors. *Id*. Dr. Pavluk concluded that it would be "impossible for [Plaintiff] to engage in any and all employment." (Tr. 3480).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or

6

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security

        Act through December 31, 2018.

2.     The claimant has not engaged in substantial gainful activity since November 1, 2013, the alleged onset date (20 C.F.R. § 404.1571 et seq.).

3.     The claimant has the following severe impairments: disorders of the spine and diabetes mellitus (20 CFR 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he could occasionally climb ladders, ropes, or scaffolds, occasionally stoop, kneel, crouch or crawl, but could not reach overhead bilaterally.

6.     The claimant is capable of performing past relevant work as an executive director and bookkeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2013, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 22-28).

## V. Law and Analysis

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has been cited by the ALJ. (*Id.*) However, the court does not

8

review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignment of Error - Treating Physician Rule**

Plaintiff asserts in the only alleged assignment of error that the ALJ erred by violating the treating physician rule with respect to the weight assigned to the opinion of Dr. Pavluk. (R. 13, PageID# 3699-3705). The Commissioner concedes that Dr. Pavluk was a treating physician. (R. 14, PageID# 3714). The Commissioner, however, argues that the ALJ satisfied the treating physician rule, when reading the opinion as a whole. *Id*. at PageID# 3714-3719.

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion

9

controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [his] physician has deemed [him] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence."

*Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed the opinion and assessed limitations contained in Dr. Pavluk's letter as follows:

> In a letter dated April 4, 2016, Dr. Pavluk indicated the claimant was deteriorating due to complications from thyroid cancer and severe pain from advanced degenerative arthritis in his neck and spine. He indicated that he was evaluated by several pain management physicians who concluded that surgery would be risky and potentially "catastrophic in terms of potential neurologic symptoms and surgical complications." He opined that the claimant's treatment with Methadone restricts his ability to continue cognitive employment. He could not lift more than 5 pounds and standing, lifting and movement for long periods would be quite difficult. He could not sustain walking more than 5-10 minutes. He opined that sitting for short periods would he impossible, as he would constantly have to get up. He could not crouch, kneel, or bend. Moreover, Dr. Pavluk opined that he could not deal with coworkers and the public or interact with supervisors due to chronic pain and medication. He concluded that due to his medications, the complexity and volatility of his ability to work in coordination with other people, deal with workplace stress made it impossible for him to engage in any and all employment" (Ex. 23F).The undersigned gives Dr. Pavluk's opinion partial weight to the extent the claimant is limited to a sedentary range of exertion due to limitations lifting, carrying, walking and standing. However, Dr. Pavluk's assessed limitations are overstated and not supported by the evidence.

(Tr. 27-28).

Plaintiff asserts that the ALJ's statement lacks analysis and fails to satisfy the treating physician rule. (R. 13, PageID# 3702). First, while the ALJ clearly did not adopt Dr. Pavluk's opinion wholesale, especially with regard to non-exertional (*i.e.* mental) limitations and symptoms, it bears noting that he assigned the opinion partial weight. Although the ALJ was under no obligation to accept the limitations assessed by Dr. Pavluk, the decision must set forth

11

good reasons for rejecting those opinions. In considering this issue, the ALJ's decision needs to be construed in its entirety. The ALJ characterized the doctor's opinion as "overstated and not supported by the evidence," but that is a mere conclusion, rather than an explanation, and it fails to satisfy the treating physician rule.

As stated above, Dr. Pavluk opined that Plaintiff could not carry more than five pounds, and that "standing, lifting, and movement for long periods of time would be quite difficult," as Plaintiff is "unable to sustain even short walks, for no more than 5-10 minutes, without interruption." (Tr. 3479-3480). *Id*. He indicated that sitting was a "challenge" for Plaintiff as he would need to constantly get up to move around. *Id*. Plaintiff was unable to crouch, kneel, or bend due to profound orthopedic impairment. *Id*. His medications hindered his ability to concentrate and to get along with the public, coworkers, and supervisors. *Id*. Dr. Pavluk concluded that it would be "impossible for [Plaintiff] to engage in any and all employment." (Tr. 3480).

The Commissioner protests that the Plaintiff fails to read the opinion as a whole, and references the ALJ's earlier discussion of Dr. Pavluk's treatment history. The ALJ indicated,

> In terms of the claimant's alleged spinal impairments, while under the care of Charles Pavluk, M.D., the claimant's lumbar and cervical radiculopathy were assessed as severe on December 10, 2014; however, physical examination was unremarkable (Ex. 13F, 7-8). During an office visit on September 25, 2015, Dr. Pavluk's documentation of the claimant's history was repetitive of previous visits, noting that he saw the claimant for cervical radiculopathy, which was a congenital condition rather than an injury. His history indicated he had several studies including MRI, CT, and electromyogram. He also received anti-inflammatory medication, opioid analgesics, physical therapy and TENS unit which failed to alleviate his pain from his neck and shoulder; however, he did not have upper extremity weakness or numbness. The claimant rated his pain as 4/10 to a maximum of 8/10. Driving, overhead work, lifting, standing, lying and straining exacerbated his pain. He also noted the claimant had ataxia, lower extremity pain and weakness. Although noting the claimant's documented history and reports of doing poorly and experiencing worsening pain during most office visits, the pain

>or symptoms he presents with are rarely addressed on examination (Ex. 22F, 1-4; 13F, 1, 9; l0F, 2; 22F, 1). Moreover, examinations are unremarkable for the severity documented by Dr. Pavluk. On September 5, 2014, the claimant presented for follow-up of cervical radiculopathy. Dr. Pavluk noted the claimant reported doing poorly, he complained of neck and shoulder pain, and worsening lower extremity paresthesia (Ex. 10F, 1). However, examination shows he had a normal gait, no joint swelling and no focal neural defects. There was no notation of his cervical or lumbar spine, nor his shoulder on examination (Ex. 10F, 7). On December 10, 2014, the claimant presented with oral herpes simplex and otitis media. Although noted to follow-up with cervical radiculopathy as well, physical examination indicated his gait was normal; there was no joint swelling and he had no neurological deficits (Ex. 13F, 1, 7).

(Tr. 26).

Although the court recognizes that the above discussion of Dr. Pavluk's treatment, given its repeated observations that his physical examinations were largely unremarkable, may constitute a sufficient discussion capable of supporting the ALJ's conclusion—that the "assessed limitations are overstated and not supported by the evidence"[2] as it relates to Plaintiff's physical impairments—the court, nevertheless, has some doubt whether the ALJ's decision sufficiently sets forth the reasons for discrediting the *physical* limitations assessed in Dr. Pavluk's opinion. But the court refrains from specifically reaching that issue, because the ALJ's decision includes a different error justifying remand, as explained below.

In addition to the physical limitations, Dr. Pavluk also opined that Plaintiff's medications hindered his ability to concentrate and to get along with the public, coworkers, and supervisors, an opinion that gets no meaningful attention in the ALJ's decision. The decision fails to give any reasons, let alone good reasons, for rejecting the *mental* limitations assessed by Dr. Pavluk.[3] The ALJ's recitation of Plaintiff's alleged physical symptoms and lack of corroborating physical

---

[2] Tr. 28.
[3] The RFC contains solely exertional limitations. (Tr. 24).

13

examination results, as cited by the Commissioner, simply has no bearing on the mental limitations assessed.

Courts routinely find that perfunctory assessments of treating source opinions do not constitute "good reasons" for their rejection. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source's opinion where the ALJ merely concluded, without explanation, that the evidence of record did not support the severity of the assessed limitations); *Patterson v. Astrue*, 2010 WL 2232309 at *14 (N.D. Ohio June 2, 2010) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance.") (Vecchiarelli, M.J.); *Fuston v. Comm'r of Soc. Sec.*, No. 1:11-CV-224, 2012 WL 1413097 at *9 (S.D. Ohio Apr. 23, 2012), *report and recommendation adopted*, 2012 WL 1831578 (S.D. Ohio May 18, 2012) ("To facilitate meaningful judicial review the ALJ must state the evidence considered which supports his conclusion.")

Because the court concludes that the ALJ failed to give good reasons for rejecting the limitations assessed by a treating source, Dr. Pavluk, the court recommends this matter be remanded for a new decision that comports with the requirements of the treating physician rule.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

VACATED and the case REMANDED for proceedings consistent with this opinion.

                                                s/ *David A. Ruiz*
                                                David A. Ruiz
                                                United States Magistrate Judge

Date: December 3, 2018

**OBJECTIONS**

      **Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**